IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADRIAN R. SCOTT,

    *Plaintiff*,

    v.

WILLIAM E. LORI, *et al*.

    *Defendants*.

Civil Action No. ELH-19-2014

**MEMORANDUM OPINION**

Adrian Scott, the self-represented plaintiff, has filed an employment discrimination action against the following defendants: Archbishop William E. Lori; Associated Catholic Charities, Inc. ("Catholic Charities"); "Our Daily Bread Employment Center Fund, Inc." ("Daily Bread"); the Roman Catholic Archdiocese of Baltimore ("Archdiocese"); Penny Lewis; Patricia Bennett; Mary Ann McCloskey; and Melissa Hafner. *See* ECF 1 (the "Complaint"). Plaintiff, an African-American male, alleges that he experienced discrimination and retaliation on the basis of race, sex, age, and disability while employed by Catholic Charities from September 2013 to April 2016.

In plaintiff's Amended Complaint (ECF 21),[1] which is accompanied by eight exhibits (ECF 21-1 to ECF 21-8), he asserts claims under a host of federal statutes, including Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.; the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*.; the

---

[1] As the Court noted in its Memorandum Opinion of July 8, 2020 (ECF 38), plaintiff filed a "More Definite Statement" (ECF 21), which the Court construed as an Amended Complaint. *See* ECF 38 at 2. There, plaintiff identified the entity as "Our Daily Bread Employment Fund Inc." In a prior motion to dismiss (ECF 24), Archbishop Lori, Catholic Charities, Our Daily Bread, and Ms. McCloskey averred that "there is no legal entity named Our Daily Bread Employment Center" and that "Our Daily Bread Employment Center Fund, Inc. is a corporate entity that was formed to solicit donations for Our Daily Bread, a program operated by Catholic Charities." ECF 24 at 2 n.1.

Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*.; 42 U.S.C. §§ 1981 and 1983; the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  He also asserts claims under Maryland law.

Initially, several of the defendants moved to dismiss the suit under Fed. R. Civ. P. 12(b)(6). ECF 24.  Curiously, the Archdiocese did not respond to the suit or join the motion to dismiss.  In a Memorandum Opinion (ECF 38) and Order (ECF 39) of July 8, 2020 (collectively, the "July 2020 Opinion"), I granted the motion in part and denied it in part.  And, I granted the Archdiocese until July 23, 2020, to respond to the suit.  ECF 39, ¶ 4.

The Archdiocese has now moved to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P.12(b)(6).  ECF 43.  The motion is supported by a memorandum (ECF 43-1) (collectively, the "Motion"), and four exhibits.  ECF 43-1 at 16-33.  The Archdiocese urges dismissal of plaintiff's Title VII claims on the ground of failure to exhaust administrative remedies.  ECF 43-1 9-12.  As to plaintiff's other claims, the Archdiocese contends that those claims should be dismissed for substantially the same reasons set forth in the July 2020 Opinion.  *Id.* at 12-13.  Mr. Scott opposes the Motion.  ECF 51.  The Opposition is accompanied by nineteen exhibits.  *See* ECF 51-1 to 51-19.  The Archdiocese replied.  ECF 54.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Background

### 1.      Factual Background[2]

The factual background of this suit is recounted in full in the July 2020 Opinion, and incorporated here.  Accordingly, I shall only briefly review the factual allegations.

Plaintiff, an African-American male, was 61 years of age when he filed his Amended Complaint in November 2019.  ECF 21, ¶ 3.  He alleges that he worked as a "Job Readiness Instructor" at Catholic Charities in Baltimore from September 2013 until April 20, 2016, when his employment was terminated.  *Id.* ¶¶ 13, 15; ECF 43-1 at 17-18 (Charge of Discrimination).  At that time, plaintiff was 58 years old.  *Id.* ¶ 3.

Archbishop Lori is the "Chief Executive Officer" of the Roman Catholic Archdiocese of Baltimore and is "responsible for management and oversight of" the Archdiocese, as well as Catholic Charities and Daily Bread.  *Id.* ¶ 4.  According to the Amended Complaint, Ms. Bennett, Ms. Lewis, Ms. McCloskey, and Ms. Hafner supervised plaintiff in various respects during the relevant time period, and are agents or employees of the above-named "Corporate Defendants." *See id.* ¶¶ 8-11.

Mr. Scott avers that from the outset of his employment in September 2013 through at least December 2015, he was subjected by his supervisors at Catholic Charities to various forms of discrimination and retaliation and to a hostile work environment. *See* ECF 38 at 3-11. Among other things, Mr. Scott alleges that he was retaliated against by Ms. Bennett, through her use of performance evaluations, for raising concerns about Catholic Charities' allegedly discriminatory

---

[2] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Complaint or Motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

conduct, *see* ECF 21, ¶¶ 24-25; subjected to "demands . . . to violate Federal" employment laws, *see id.* ¶¶ 30; told by Ms. Lewis "I don't like men," and that he should "work someplace else" if that statement made him uncomfortable, *id.* ¶ 35; given "falsified disciplinary writeups [and] falsified annual performance evaluations, *id.* ¶ 36; pressured repeatedly to resign and to abandon complaints he had lodged against coworkers as well as Ms. Bennett and Ms. Lewis, *see id.* ¶¶ 32, 36, 41, 50, 52; given additional job duties after refusing to abandon his complaints, , *id.* ¶¶ 43-45; and disciplined for calling out sick from work on short notice, whereas "three female co-workers" and the "male Caucasian co-worker in his department" had called out sick on short notice were not disciplined, *id.* ¶¶ 61, 64, 66.

Further, Mr. Scott alleges that in "early 2016" Ms. Lewis contacted a former co-worker, "Delia Henry," asking her to "'try to get something on Mr. Scott so we can fire him.'" *Id.* ¶ 49. As to plaintiff's job responsibilities and compensation, he complains, among other things, that defendants continued to change his job duties, forced him to work through his unpaid lunch break, "docked time spent working on the clock," and did not compensate him for overtime work. *See id.* ¶¶ 70-71.

In January 2016, Ms. Lewis and Ms. Bennett signed a revised final 2015 performance evaluation that was "favorable to Mr. Scott." *Id.* ¶ 73. Nevertheless, according to plaintiff, Ms. Lewis subsequently "manufactured a disciplinary write-up" in February 2016, alleging that Mr. Scott failed to return a client's phone call within 24 hours. Yet, he claims that his "female co-workers and his Caucasian male co-worker" were "never written up" by Ms. Lewis for such conduct. *Id.* ¶¶ 77-78.

On February 29, 2016, Ms. Lewis allegedly "began verbally assaulting [plaintiff] in front of his students." *Id.* ¶ 82. In particular, Ms. Lewis allegedly "fuss[ed] and cuss[ed] while stating

that she was aware that [he] had filed complaints on her and that he would be terminated once Melissa Hafner arrived later that day." *Id.* This "retaliatory assault" caused plaintiff to suffer a severe anxiety attack, requiring him to be transported by ambulance to a hospital. *Id.* ¶ 83.

On March 1, 2016, defendants placed Mr. Scott on "Family Medical leave." *Id.* ¶ 86. After receiving a physician's approval to return to work, but with instructions not to perform recruiting duties for a month, plaintiff returned to work on March 4, 2016. *Id.* ¶¶ 88-89; *see* ECF 21-6 (4/3/2016 medical note). That day, Ms. McCloskey allegedly advised plaintiff that Catholic Charities and the Archdiocese "do[] not recognize 'mental illness' as a disability," and therefore he "would in effect have to be one hundred percent well before being allowed to return to duty and must exit the building." *Id.* ¶ 92. In response, Mr. Scott "requested a reasonable accommodation to man the computer lab" or perform other job tasks. *Id.* ¶ 93. But, Mr. Scott claims that defendants refused to allow him to perform other duties. *Id.* ¶ 94.

Plaintiff filed a complaint with the "Maryland Commission Civil Rights" ("MCCR") on March 25, 2016, and provided defendants with a copy of the complaint. *Id.* ¶ 96. During a meeting on March 30, 2016, Ms. Hafner, Ms. McCloskey, and Ms. Lewis allegedly pressed plaintiff to drop his complaint and agree not to file further complaints in exchange for a "restoration of his Family Medical Leave and inclusion of a favorable 2015 annual performance evaluation" in his personnel file. *Id.* ¶ 98. When plaintiff refused, he was placed on a performance improvement plan, which included duties "completely out of the scope of his areas of expertise . . . ." *Id.*; *see id.* ¶ 97. Mr. Scott was assigned to the performance improvement plan for only one month, during which he received no support. *See id.* ¶¶ 101-04. On April 20, 2016, less than thirty days after plaintiff was placed on the improvement plan, defendants terminated his employment. *See id.* ¶¶ 102, 106; ECF 43-1 at 17.

On November 10, 2016, plaintiff filed a Charge of Discrimination with the MCCR.  ECF 43-1 at 17.  Notably, he listed only "Catholic Charities" as his employer.  *Id.*  And, as to the basis of the claim of discrimination, he checked the boxes for "Race," "Sex," "Age," "Disability" and "Retaliation."  *Id.*  Plaintiff identified the earliest date of discrimination as October 1, 2015, and the most recent as April 20, 2016.  *Id.*  The charge included a brief narrative account of the alleged discrimination.  *See id.* at 17-18.

On May 24, 2018, the MCCR issued a Written Finding of No Probable Cause.  *Id.* at 20-26.  Mr. Scott requested reconsideration, and on August 21, 2018, the MCCR upheld its original finding.  *Id.* at 34.  Thereafter, the U.S. Equal Employment Opportunity Commission ("EEOC") adopted the MCCR's findings and issued a Notice of Right to Sue.  *Id.* at 31.[3]

This suit followed on July 15, 2019.  ECF 1.

## 2.      Procedural History

As noted, *supra*, on December 19, 2019, Archbishop Lori, Catholic Charities, Our Daily Bread, and Ms. McCloskey moved to dismiss the Amended Complaint under Rule 12(b)(6).  ECF 24.  The Archdiocese was not a moving party.  *Id.*  In the July 2020 Opinion, I granted that motion in part and denied it in part.  ECF 38; ECF 39.

In particular, I dismissed plaintiff's FLSA, FMLA, and § 1983 claims, with prejudice, because they were untimely.  ECF 38 at 24-25.  I also dismissed, with prejudice, plaintiff's ADEA, ADA, and Title VII claims lodged against Archbishop Lori and Ms. McCloskey, explaining that

---

[3] In the July 2020 Opinion, I noted that the EEOC issued the Notice of Right to Sue on April 17, 2019, citing an exhibit attached to plaintiff's Complaint that bears that date.  *See* ECF 1-2.  The Archdiocese, however, has attached to the Motion a document that appears to be a virtually identical Notice of Right to Sue, but which is dated October 29, 2018.  *See* ECF 43-1 at 31.  The Archdiocese does not address this apparent discrepancy.  However, the discrepancy is not material to the issues here.

these statutes do not provide a cause of action to sue a supervisor in his or her individual capacity. *See id.* at 27, 30-31, 32.  Further, I dismissed, without prejudice, plaintiff's claims arising under the ADEA, ADA, and Title VII as to Catholic Charities and Daily Bread, because plaintiff had not plausibly alleged discrimination on the basis of age, disability, race, or sex. *See id.* at 26, 30, 33, 44.  Similarly, as to all defendants, I dismissed, without prejudice, plaintiff's § 1981 claim and his claims founded on Maryland law. *See id.* at 42-44.

I did not, however, dismiss plaintiff's Title VII retaliation claim against Catholic Charities. *Id.* at 41-42.  Rather, I concluded that plaintiff plausibly alleged that defendants retaliated against him after he notified "his employer" of the complaint he filed on March 25, 2016 with the MCCR, and refused to abandon the complaint. *See id.* at 38-42 (citing ECF 31, ¶¶ 96,98, 99, 102).

In the July 2020 Opinion, I granted the Archdiocese until July 23, 2020, to respond to the suit.  ECF 39.  The Archdiocese filed its Motion on July 24, 2020.  ECF 44; ECF 43; ECF 43-1.[4] On July 24, 2020, the Clerk notified plaintiff of his right to respond to the Motion, as well as the potential consequences of failing to do so.  ECF 44.  Pursuant to Local Rule 105.2(a) and Fed. R. Civ. P. 6(d), plaintiff's response was due 17 days later, on August 10, 2020.  Plaintiff filed his Opposition on August 25, 2020, fifteen days late.  ECF 51.  Although not insubstantial, plaintiff's filing delay has not prejudiced the Archdiocese in any way.  Therefore, in the exercise of my discretion, I shall consider the Opposition.[5]

---

[4] The Docket indicates that the Archdiocese attempted to file the motion on July 23, 2020, but the attempted filing was noted by the Clerk of the Court as "Filed in Error." *See* ECF 42.

In the supporting memorandum, the Archdiocese states that counsel "understood (perhaps misunderstood) that Plaintiff's unusual and inconsistent references to Archbishop Lori and the Archdiocese were intended to seek relief against a single party." ECF 43-1 at 6.

[5] The Opposition is titled "Opposition to Defendants [sic] Motion to Dismiss Plaintiff's Amended Complaint, Request for Default Judgment."  Despite the title, I do not construe the

## II.      Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  Of course, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal

---

Opposition as a motion for default judgment.  Such relief is unavailable here.  *See* Fed. R. Civ. P. 55(a).

theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal

rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted);  *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The exhibits attached to the Motion include Mr. Scott's Charge of Discrimination, ECF 43-1 at 17-18; the MCCR's Written Finding, *id.* at 20-27; the MCCR's denial of Mr. Scott's request for reconsideration, *id.* at 29; and the EEOC's Notice of Right to Sue, *id.* at 31.  In resolving the Motion, I may consider the MCCR and EEOC materials, as these documents are integral to the suit.  *See, e.g.*, *Webb v. Potomac Elec. Power Co.,* TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) ("[T]he Court will consider Webb's EEOC Charge, submitted with the Motion, as a document integral to the Amended Complaint because Webb referenced the Charge in the Amended Complaint and he has not objected to its authenticity."); *Evans v. Md. State Hwy. Admin*., JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) (same); *White v. Mortg. Dynamics, Inc*., 528 F. Supp. 2d 576, 579 (D. Md. 2007) (same).

In reviewing the Motion, I am mindful that plaintiff is self-represented.  Therefore, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."  *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A*., DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

### III.    Discussion

As noted, the Archdiocese contends that Mr. Scott's Title VII claims against the Archdiocese should be dismissed because he failed to exhaust administrative remedies.  ECF 43-1 at 9-12.  The Archdiocese urges dismissal of the other claims for substantially the same reasons that led to dismissal of the claims as to the other defendants.  *Id.* at 12-13.

### A.    ADEA, ADA, § 1981, and Maryland Law Claims

In the July 2020 Opinion, I determined that the Amended Complaint did not allege facts sufficient to state a plausible claim under the ADEA, ADA, § 1981, or Maryland law.  The Archdiocese contends that the same reasoning applies as to the Archdiocese.  *Id.* at 12-13.

Mr. Scott asserts that the Archdiocese's argument fails for several reasons, ECF 51 at 16-17:

> (1) Defendants failed to [s]erve Plaintiff in a timely manner and defend the suit due to their own misconduct and abuse of process.  (2) Defendant has voluntarily, through gross misconduct while engaging in misrepresentation, fraud, and deceit refused to participate in the suit except when falsifying court dockets to serve defendants [sic] own needs.  (3) Defendant has made a mockery and sham out of this adversary process.

These assertions do not amount to an argument that the reasoning of the July 2020 Opinion regarding the ADEA, ADA, § 1981, and Maryland law claims should not be extended to the Archdiocese.  Further, contrary to the first assertion, the Certificate of Service attached to the Motion indicates that plaintiff was timely served with a copy.  *See* ECF 43-1 at 14.

Plaintiff has not addressed the substance of the contention that the rationale of the July 2020 Opinion applies as to the Archdiocese.  The thrust of the Opposition echoes arguments made in plaintiff's prior motion for sanctions brought under Fed. R. Civ. P. 11(c)(2) (ECF 33), which I denied in a Memorandum and Order of February 24, 2020 (ECF 34, ECF 35).  And, much of the seventeen-page Opposition addresses the procedural history of the suit, focusing in particular on

alleged deficiencies in the Archdiocese's prosecution of its case and the bad faith of the Archdiocese and defense counsel. *See* ECF 51 at 1-6. This account of the suit, even if true, is unrelated to arguments on which the Motion rests.

Therefore, plaintiff has waived any opposition to the argument. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (same). When a plaintiff fails to oppose a motion to dismiss, a district court is "entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted" in the motion. *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *see also Ferdinand-Davenport*, 742 F. Supp. 2d at 777 ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim.").

In any event, the Archdiocese is correct that the resolution of the Motion as to these claims is on all fours with the July 2020 Opinion. As to the ADEA claim, I previously concluded that "there are no factual allegations in the Amended Complaint to support the inference that Mr. Scott experienced discrimination because of his age." ECF 38 at 27. Regarding the ADA claim, I concluded that "the Amended Complaint is devoid of any allegations concerning plaintiff's job responsibilities." *Id.* at 30. Such allegations, I explained, are necessary to state a claim under Title I of the ADA for discrimination on the basis of failure to provide an employee with "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability[.]" 42 U.S.C. § 12112(b)(5)(B). And, I dismissed the claims arising under § 1981 and Maryland law, respectively, for similar factual deficiencies. *See* ECF 38 at 42-44. The reasoning underlying my prior dismissal of the above claims applies with equal force to the Archdiocese.

Therefore, I shall dismiss plaintiff's ADEA, ADA, § 1981, and State law claims, *without prejudice*.

### B.        Title VII Claim

For the reasons explained below, the Title VII claim as to the Archdiocese warrants dismissal for failure to exhaust administrative remedies.

To assert a Title VII claim in federal court, a plaintiff must first exhaust his administrative remedies.  *See Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843. 1851 (2019); *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016).  To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days "after the alleged unlawful employment practice occur[s]."  42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004).  Because Maryland is a deferral state, a claim must be filed no more than 300 days after the alleged unlawful employment practice.  *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4 n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F. Appx 256 (4th Cir. 2008).

Upon receiving a charge, the EEOC must notify the employer and investigate the allegations. 42 U.S.C. § 2000e–5(b).  If the EEOC finds "reasonable cause" to believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.*  If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court.  *Id.* § 2000e–5(f)(1).  On the other hand, where the EEOC concludes that there is "n[o] reasonable cause to believe that the charge is true," Title VII directs the EEOC to dismiss the charge and notify the

complainant of his right to sue in court. *Id.* § 2000e–5(b), f(1). This notice is commonly called a "right-to-sue letter." *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006). Of relevance here, a complainant has 90 days to file suit in federal or state court after being notified of the right to sue. *Id.* § 2000e–5f(1).

The Supreme Court recently held that a plaintiff's failure to exhaust administrative remedies does not divest the court of jurisdiction. *Davis*, 139 S. Ct. at 1846. Rather, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Although a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The Fourth Circuit has admonished that the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Administrative exhaustion advances the complementary goals "of protecting agency authority in the administrative process and promoting efficiency in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (internal quotation marks and alterations omitted); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013). In particular, the exhaustion requirement "ensures that the employer is 'put on notice of the alleged violations' to facilitate out-of-court resolution[.]" *Stewart*, 912 F.3d at 699 (quoting *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005)).

Moreover, Title VII's administrative exhaustion process has substantive effect.  It limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge.  *See* 42 U.S.C. § 2000e–5(f)(1); *Sydnor*, 681 F.3d at 593; *Causey v. Blog*, 162 F.3d 795, 800 (4th Cir. 1998); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996).

The naming requirement follows from the text of Title VII, which provides that an "aggrieved party" who satisfies the strictures of administrative exhaustion may bring a "civil action . . . against the respondent named in the charge . . . ."  42 U.S.C. § 2000e–5(f)(1).  More than a "mere technicality," the naming requirement serves to "'notif[y] the charged party of the asserted violation,'" thus "'permit[ting] effectuation of the Act's primary goal, the securing of voluntary compliance with the law.'"  *Alvarado v. Bd. of Tr's of Montgomery Cmty. Coll.*, 848 F.2d 457, 458 (4th Cir. 1988) (citation omitted); *see, e.g.*, *Talbot v. U.S. Foodservice*, 204 F. Supp. 2d 881, 883 (D. Md. 2002) (plaintiff's Title VII claims against union were barred because EEOC charge only mentioned employer).

That said, because "EEOC charges often are not completed by lawyers," the Fourth Circuit has instructed courts to "construe them liberally."  *Chacko*, 429 F.3d at 509; *see Sydnor*, 681 F.3d at 594 ("[T]he exhaustion requirement should not become a tripwire for hapless plaintiffs."). Courts in the Fourth Circuit have declined blindly to enforce the naming requirement, instead concluding that substantial compliance suffices. *See EEOC v. 1618 Concepts, Inc.*, ___ F. Supp. 3d ___, 2020 WL 87994, at *4 (M.D.N.C. Jan. 7, 2020) (collecting cases); *see, e.g.*, *Davis v. BBR Mgmt., LLC*, DKC-10-552, 2011 WL 337342, at *5 (D. Md. Jan. 31, 2011) (holding that the EEOC charge need only put the defendant on notice of the claims and enable the EEOC to determine the relevant participants for reconciliation).  Similarly, federal courts may hear claims not presented to the EEOC so long as they are "'reasonably related'" to the plaintiff's EEOC charge "'and can

be expected to follow from a reasonable administrative investigation . . . .'" *Sydnor*, 681 F.3d at 594 (quoting *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000)); *see also Stewart*, 912 F.3d at 705.

As noted, Mr. Scott named only "Catholic Charities" as his employer in the Charge.  ECF 43-1 at 17.  Moreover, the narrative portion of the charge does not mention the Archdiocese.  *Id.* at 17-18.  Rather, the narrative portion refers only to Catholic Charities, Ms. Lewis, and "HR and senior management and staff" of Catholic Charities.  *Id.*  Furthermore, neither MCCR's Written Finding of No Probable Cause nor the MCCR's denial of plaintiff's request for reconsideration identified the Archdiocese.  *Id.* at 20.

Applying the principles outlined above, I am of the view that plaintiff did not exhaust his administrative remedies as to the Archdiocese.  In particular, the Charge of Discrimination that Mr. Scott filed with the MCCR on November 10, 2016, which the EEOC subsequently adopted, failed to satisfy the naming requirement of the Title VII administrative exhaustion process.

Plaintiff's failure to identify the Archdiocese in the Charge constitutes a legal defect that is more than a "mere technicality."  *Alvarado*, *supra*, 848 F.2d at 458.  Because the Archdiocese was not named, it was not on notice of plaintiff's allegations of unlawful discrimination, as Title VII requires.

Critically, neither the Amended Complaint nor the Opposition elucidates the relationship between Catholic Charities and the Archdiocese.  The Amended Complaint asserts only that Catholic Charities "has a corporate affiliation with the [Archdiocese]," without elaboration.  ECF 21 at 3. The Opposition restates the same.  *See* ECF 51 at 10.  Without more, I cannot say that the Archdiocese was Mr. Scott's employer or that, based on the Charge, it was put on notice of Mr. Scott's pursuit of legal action.  *See Chacko*, 429 F.3d at 511 (reasoning that administrative charges

alleging harassment by one set of actors—supervisors—did not "fairly encompass[]" subsequent allegations against another set—coworkers).

Plaintiff asserts in the Opposition, without citation to legal authority, that courts in the Fourth Circuit have "recognized" that exhaustion of administrative remedies is an issue "for a jury to decide."  ECF 51 at 16.  This assertion is contrary to the Supreme Court's ruling in *Davis*.  As noted, failure to exhaust may warrant dismissal under Rule 12(b)(6).  *See Kenion*, *supra*, 2019 WL 4393296, at *4.

Exhibit 5 to the Opposition might appear, at first glance, to lend credence to Mr. Scott's claims regarding the "affiliation" between Catholic Charities and the Archdiocese.  The exhibit contains two pages that appear to be an excerpt of a larger document.  *See* ECF 51-5 at 2-3.  Both pages are titled "Associated Catholic Charities, Inc. and Affiliated organizations," sub-titled "Notes to Combined Financial Statements," and dated "June 30, 2014 and 2013."  *Id.*  The first page lists various "Affiliated Organizations" of Catholic Charities, and then states in the following paragraph: "All of the combined organizations operate under the control of the Roman Catholic Archbishop of Baltimore."  ECF 51-5 at 2.

Yet, plaintiff does not discuss the exhibit in the Opposition.  The document shown in the exhibit is not free from questions regarding its authenticity, and may not be considered at this stage.  *See Goines, supra*, 822 F.3d at 166.  Moreover, even if the document's authenticity were clear, I could not conclude that Mr. Scott exhausted his administrative remedies on the basis of such a slender reed.

Similar reasoning applies to Exhibit 18 to the Opposition.  That exhibit contains a notarized letter dated March 9, 2016, which is signed by Mr. Scott and addressed to "All Parties Concerned."  ECF 51-18 at 2.  The letter begins: "I am an employee of Catholic Charities . . . under the

Archdiocese of Baltimore." *Id.* Although the authenticity of this document may not be in question, it still does not get plaintiff's administrative exhaustion argument over the hump. The mere assertion that plaintiff's employer, Catholic Charities, was "under the Archdiocese" does not furnish a basis to conclude that the Archdiocese (1) "received fair notice" of the Charge of Discrimination and (2) that the EEOC "was able to attempt conciliation" with the Archdiocese. *Davis v. BBR Mgmt., LLC*, DKC 10-552, 2011 WL 337342, at *5 (D. Md. Jan. 31, 2011) (identifying conditions where failure to name defendant in EEOC charge "does not bar a subsequent suit").

## IV.    Conclusion

For the reasons stated above, I shall grant the Motion (ECF 43). An Order follows, consistent with this Memorandum Opinion.


Date:   September 24, 2020                                  _____/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge